ENTERED

DEC 1 2 2007

FILED

DEC 1 1 2007

CLERK, U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SAN FERNANDO VALLEY DIVISION

Case No. SV 00-15821GM

Chapter 11

In re

CONTINENTAL COIN CORPORATION

Debtor

**MEMORANDUM OF LEGAL OPINION RE: ORDER ALLOWING CREDITOR ROGER VIRTUE TO FILE A COMPLAINT**

DATE:  NOVEMBER 14, 2007
TIME:   10:00 A.M.
PLACE:  COURTROOM 303
 21041 BURBANK BLVD.
 WOODLAND HILLS, CA 91367

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2   I. A THEORY OF TRUSTEE LIABILITY ............................................ 2

3

4   II. CASELAW ON THE ISSUE OF IMMUNITY FOR TRUSTEES ........................ 9

5   A. The Position of Trustee Qualifies for Immunity .............................. 9

6   B. A Trustee Can be Immune from Suit Concerning the Sale of Property of the Estate ........... 11

7   C. The Level of Quasi-Judicial Immunity for Trustees in the Ninth Circuit .................. 12

8   1. A Trustee is Immune from Personal Liability for Simple Negligence ..................... 12

9   2. A Trustee is Never Immune from Personal Liability for Willful and Deliberate Acts .......... 14

10  3. The Ninth Circuit Has Not Directly Dealt With the Issue of Liability for Gross Negligence ..... 15

11  4. A Court Order to Conduct the Sale After Full Disclosure Assures Trustee Immunity ........... 18

12

13  III. THE COMPLAINT MUST EXCLUDE ANY CLAIMS AGAINST THE TRUSTEE'S

14      ATTORNEY ........................................................... 19

15

16  IV. HILL, FARRER & BURRILL CANNOT BE APPOINTED AS COUNSEL

17      ................................................................... 20

18

19  V. MR. VIRTUE MAY FILE A REVISED COMPLAINT ............................ 21

20

21

22

23

24

25

26

27

28

1    Roger Virtue, the principal remaining creditor of Continental Coin Corporation, seeks court

2  consent to sue the chapter 11 trustee and her law firm on behalf of the estate and to employ counsel to

3  do so at the expense of the estate. Ordinarily court consent would not be required because the proposed

4  complaint is to be filed in the bankruptcy court.[1] However in this case, the confirmation order requires

5  pre-approval by the court for the filing of any complaint against the trustee.

6    At the time of filing of this chapter 11, Continental Coin Corporation operated a retail sales

7  operation on Sepulveda Blvd. and a commemorative coin mint at a second site. Each entity was on

8  leased property. The debtor in possession ran these operations for some months, during which time it

9  assumed both ground leases. Approximately one year after the case was filed, Nancy Zamora was

10  appointed as the chapter 11 trustee. She liquidated the inventory at the retail location, leased various

11  portions of that property, and employed two people to keep the mint in operation (though at a net loss)

12  so as to maintain its license to produce coins. Two and a half years after her appointment, Ms. Zamora

13  concluded a sale of the two properties, receiving $880,000 for the retail ground lease and $140,000 for

14  the mint, as well as an additional $40,000 for the customer list, phone number, and corporate name.

15  These sales were approved by the court. Various litigation was settled and in May 2007 - five and a half

16  years after her appointment - Ms. Zamora confirmed a chapter 11 plan which was less than one hundred

17  percent payout to creditors.

18    The crux of the proposed complaint is the assertion that the trustee failed to exercise her

19  business judgment in a reasonable fashion when she initially refused to accept offers for sale of the

20  ground leases and the personal property of the mint in 2002 (totaling about $1.1 million), failed to seek

21  to set aside the order(s) allowing assumption of these leases on the ground that the orders were obtained

22  without notice to creditors, did not employ a real estate broker to pursue offers, failed to undertake

23  diligent marketing efforts, and further delayed sale because she alleged a $2.5 million offer for the

24  Sepulveda Blvd. Property (which offer movant infers never existed or was not credible). The proposed

25

26    [1] Kashani v. Fulton (*In re* Kashani), 190 B.R. 875, 885 (B.A.P. 9th Cir. 1995): "We conclude that

27  leave to sue the trustee is required to sue in those federal courts other than the bankruptcy court which

28  actually approves the trustee's appointment."

1  complaint asserts a claim for relief against trustee's counsel for legal malpractice and four claims for

2  relief against the trustee and her law firm: negligence, gross negligence, breach of fiduciary and

3  statutory duty.

4         Mr. Virtue also wishes the court to approve the employment of his attorney - Hill, Farrer &

5  Burrill. Mr. Virtue agrees that he will be paying their fees, but he wants to look to the estate for

6  reimbursement if this lawsuit is successful.

7         Because prior consent is needed to file this complaint, it is incumbent upon the court to

8  determine whether the proposed complaint can state a claim for relief against the proposed defendants.

9  If all relief under the general scenario alleged by Mr. Virtue is barred as a matter of law (in that the

10  trustee would be immune from personal liability or have some other absolute defense), it would be a

11  waste of estate assets to permit this matter to proceed. Thus, although I am not deciding whether the

12  allegations are well-pleaded, I must rule on whether the trustee and/or her counsel are entitled to

13  immunity (which would prevent even seeking a judgment for liability) or to an absolute defense (if the

14  complaint is allowed to be filed) even if all of the allegations were proven. If the trustee and/or her

15  counsel are protected in one form or another, the motion to file the complaint must be denied as to one

16  or more of the claims asserted therein.

17

18

19  ## I. A THEORY OF TRUSTEE LIABILITY

20         The Bankruptcy Code does not provide any guidance as to when a trustee is personally liable for

21  his/her acts or failure to act. An attempt to codify a standard was most recently made in the last decade

22  when the National Bankruptcy Review Commission recognized the need to deal with potential personal

23  liability of a trustee and specified that a difference exists between handling cases under different

24  chapters of the code. Recommendation 3.3.2, entitled *Personal Liability of Trustees* provides:

25              Trustees appointed in cases under Chapter 7, 11, 12 or 13 of the Bankruptcy Code
           should not be subject to suit in their individual capacity for acts taken within the scope of
26         their duties as delineated in the Bankruptcy Code or by order of the court, as long as the
           applicable order was issued on notice to interested parties and there was full disclosure to
27         the court.
              Chapter 7, 12 and 13 trustees only should be subject to suit in the trustee's
28         representative capacity and subject to suit in the trustee's personal capacity only to the

2

extent that the trustee acted with gross negligence in the performance of the trustee's fiduciary duties. Gross negligence should be defined as reckless indifference or deliberate disregard of the trustee's fiduciary duty.

A Chapter 11 trustee of a corporate debtor only should be subject to suit in the trustee's representative capacity and subject to suit in the trustee's personal capacity only to the extent that the trustee has violated the standard of care applicable to officers and directors of a corporation in the state in which the Chapter 11 case is pending.

Debtors in possession should remain subject to suit to the same extent as currently exists under state or federal law.[2]

The full recommendation of the Commission was never put before Congress, but the initial bill (labeled the Bankruptcy Reform Act of 1999, H.R. 833) did provide some clarification as to trustee liability by amending 11 USC §323 to include the following:

(c) The trustee in a case under this title may not be sued, either personally, in a representative capacity, or against the trustee's bond in favor of the United States--
(1) for acts taken in furtherance of the trustee's duties or authority in a case in which the debtor is subsequently determined to be ineligible for relief under the chapter in which the trustee was appointed; or
(2) for the dissemination of statistics and other information regarding a case or cases, unless the trustee has actual knowledge that the information is false.
(d) The trustee in a case under this title may not be sued in a personal capacity without leave of the bankruptcy court in which the case is pending.[3]

This provision passed the House - over the objection of the Department of Justice, which oversees the trustees through the Office of the United States Trustee.[4] The Department of Justice was particularly concerned that a trustee operating a business might act in such a way as to create short-term profits for the creditors to the detriment of innocent third parties, who would then have no recourse. The example given dealt with hazardous waste. Rather than protecting the trustee and the bond in this way, the Department of Justice recommended that the trustee be encouraged to carry private insurance by authorizing the trustee to be reimbursed from the estate for the premiums.

However, once the bill reached the Senate, the provision on trustee liability was stripped out and was never reintroduced after the 106th Congress adjourned. 11 USC §323, as it stands today, is

---

[2] National Bankruptcy Review Commission Final Report, Bankruptcy: The Next Twenty Years 841 (1997).

[3] H.R. 833, 106th Cong. § 115 (1999).

[4] Letter from Dep't of Justice to Congressman Henry Hyde, Chair of the House Judiciary Committee (Apr. 19, 1999) (expressing concerns with bill), reprinted in H.R. REPORT NO. 106-123(I) (1999).

1  unchanged by BAPCPA.[5]

2      The inclusion of a proposed standard for trustee liability in the Commission's report led to a

3  flurry of law review articles - some in conflict with each other - but all agreeing that the current state of

4  the law is inadequate and that this is a very important matter to be resolved.  One of the most cited is

5  that of Professor Daniel B. Bogart,[6] who criticized the Commission's formulation as being inconsistent

6  with non-bankruptcy trust law and with the duties owed by a debtor-in-possession (which arise from

7  those of the trustee rather than the other way around).  Professor Bogart argues that a bankruptcy trustee

8  is simultaneously a fiduciary and an officer of the court.  A trustee owes two primary duties to the

9  beneficiaries of the trust: a duty of care and a duty of loyalty.  To that extent, a trustee would be liable

10  for breach of fiduciary duty to a creditor or equity holder of the bankruptcy estate, but not to third parties

11  with whom the trustee may deal.  This is good trust law and Professor Bogart urges the courts (and

12  congress) to follow it.

13      On the other hand, David P. Primack, while agreeing with Professor Bogart on some points,

14  argues that a chapter 11 trustee should be governed by a "uniform standard modeled on the duties of a

15  corporate director" rather than on those of a private trustee.[7]  Either standard would at least have

16  provided uniform guidance to the courts and some level of comfort to trustees, but no standard exists

17  except that which is being slowly formulated through case law.

18      While either of these theories is enticing in its simplicity and clarity, it is important to understand

19  that a bankruptcy trustee is neither identical to an individual who serves as a trustee in the private sphere

20  nor to a corporate director.  Courts have at least tacitly recognized this by providing some level of

21  protection to bankruptcy trustees who would have been personally liable had they performed the same

22

23      [5] Because this case precedes BAPCPA, any change to §323 would probably not apply to Continental
24  Coin, but it might at least give some guidance on the issue.

25      [6] Daniel B. Bogart, *Finding the Still Small Voice: The Liability of Bankruptcy Trustees and the*
26  *Work of the National Bankruptcy Review Commission*, 102 DICK L. REV. 703(1998).

27      [7] David P. Primack, Note, *Confusion and Solution: Chapter 11 Bankruptcy Trustee's Standard of*
28  *Care for Personal Liability*, 43 WM. & MARY L. REV.1297, 1318 (2002).

1  acts as trustee in the non-bankruptcy setting or as a corporate director.  Since there is no statue on the

2  books, courts have crafted the concept of quasi-judicial immunity or derived immunity, with certain

3  courts conferring greater protection on the trustee than is given by other courts.[8]

4       Professor Theresa J. Pulley Radwan wrote an interesting summary and analysis of the three

5  levels of liability to which a trustee might be subjected, detailing the pros and cons each.[9]  She argues

6  for a straightforward negligence standard, while acknowledging that this might lower the number of

7  qualified people willing to serve as trustee, which would be a particularly difficult problem in

8  California.  She also discusses the possibility of holding a trustee liable only for gross negligence and/or

9  intentional acts, finding that neither is a satisfactory solution.

10      Were I in the position of crafting an appropriate policy for trustee liability, I would posit that a

11  chapter 7, 12, or 13 trustee is entitled to immunity except for acts or omissions of "gross negligence" or

12  willful and intentional acts in violation of a trustee's fiduciary duty.  I understand the point by Professor

13  Radwan that the definition of "gross negligence" is difficult and often includes intentional acts.[10]  But

14  that is not a reason to either contract or expand the scope of liability.  I believe that a trustee is entitled

15  to more protection than would occur if she were liable for mere negligence, but less immunity than

16  would occur if the limit were intentional and willful behavior. This is neither the standard of a private

17  trustee nor of a corporate director.

18      This is because in a chapter 7, 12, or 13 case, the circumstances surrounding the appointment of

19  a trustee are so different from those of a trustee in a non-bankruptcy setting, that it would be unfair to

20  the trustee and bad public policy to hold the trustee to this high standard concerning acts of negligence.

21      In a non-bankruptcy situation, the trustee is selected by the trustor and can refuse the position.

22  Both the trustor and the trustee have prior knowledge of the circumstances before they reach a mutual

23

24      [8] The terms immunity, absolute immunity, qualified immunity, qualified judicial immunity, quasi-

25  judicial immunity, derived immunity, and judicial immunity are use interchangeably in this memorandum.

26      [9] Theresa J. Pulley Radwan, *Trustees in Trouble: Holding Bankruptcy Trustees Personally Liable*

27  *for Professional Negligence*, 35 CONN. L. REV. 525 (2003).

28      [10] *Id.*, at 551.

5

1  agreement that this particular trustee will serve in this position. It is voluntary on both sides. The

2  trustee can determine in advance what issues may arise and if s/he is not willing to deal with the trust

3  property or the potential beneficiaries, s/he will simply refuse to serve. A corporate director has the

4  same level of knowledge and choice. However in a chapter 7, 12, or 13 bankruptcy case, there is no

5  prior knowledge by the trustee on any of these circumstances.

6      Further, as noted by the Fifth Circuit Court of Appeals, the disinterestedness requirement means

7  selection of a trustee with limited historical knowledge of this debtor and its business and, perhaps, no

8  knowledge of the industry in which the business operates. The trustee also must make rapid, complex

9  decisions without the assistance of competent management and sometimes over the opposition and

10  hostility of secured and/or unsecured creditors.[11]

11      The bankruptcy trustee is either a member of the trustee panel (chapter 7), who receives cases by

12  random assignment at the time of filing, or is a standing trustee (chapter 12 or 13), who handles all of

13  those cases which are randomly assigned to a judge or to a particular group of judges. While a trustee

14  can refuse a case, this is limited to conflicts of interest, not because a case is difficult, insolvent, or the

15  creditors are unpleasant. Any trustee who removes himself from a case just because it may be

16  contentious or insolvent will not long be part of the panel.

17      For this reason alone, it is necessary to grant chapter 7, 12, and 13 trustees more protection than

18  the non-bankruptcy trustee or corporate director from disgruntled creditors or beneficiaries or interest

19  holders. The bankruptcy system simply could not function unless trustees were willing to handle the

20  difficult cases, whether they are lucrative or not. But no trustee in his right mind would regularly

21  subject himself to personal liability for negligence or even to having to defend a lawsuit for such alleged

22  behavior.[12]

23

24      [11]Dodson v. Huff (*In re* Smyth), 207 F.3d 758, 762 (5th Cir. 2000), (citing DiStefano v. Stern (*In re*

25  J.F.D. Enterprises, Inc.), 223 B.R. 610, 628 (Bankr. D. Mass. 1998)).

26      [12]  In this I strongly disagree with Professor Radwan. Although trustee's can insure themselves

27  against personal liability, if lawsuits become the "flavor of the month," the premiums will rise to the point

28  where it becomes financially impossible for a trustee to run that kind of practice and still make sufficient

income to justify the work. This is particularly true in high-priced areas of the country where rent, staff, etc.

6

1    Thus, a policy has arisen that protects the interests of all bankruptcy stakeholders (debtors,

2  creditors, equity, panel and standing trustees, and the courts), which quickly terminates complaints for

3  negligence, but allows suits to go forward for  intentional and willful wrongdoing and sometimes also

4  for gross negligence.  This is good public policy, as a strong argument can be made for denying

5  immunity when a trustee's acts are willful or so negligent that they arise to practically the same level.

6  There needs to be a balance between protecting trustees in carrying out their adjudicative functions and

7  protecting debtors and creditors from trustee conduct which goes beyond mistakes in business judgment

8  or mere negligence.

9    As noted in the Commission Report, "[t]oo little protection might expose a trustee to excessive

10  personal liability and dissuade capable people from becoming trustees.  Too much protection will not

11  encourage responsible decision making on difficult estate management issues."[13]  So while removing

12  any question of personal liability for ordinary negligence, there will be no disincentive to qualified

13  people to serve as standing or panel trustees.  But there are still

14  some safeguards in the system to handle trustees who are negligent: (1) the bankruptcy code allows the

15  creditors to vote out a trustee who is unsatisfactory and (2) the United States trustee can seek to remove

16  a trustee from the panel if that trustee is not performing his/her duties in an acceptable fashion.

17    But chapter 11 is different and closely parallels the normal trust situation, with even more

18  safeguards to all stakeholders.[14]  In a chapter 11 case, the trustee is selected only after the United States

19  trustee has conferred with the debtor, the creditors, and equity (if relevant).  The person who is selected

20

---

21  put economic strain on the trustee's business, since trustees are paid the same percent of asset distribution

22  regardless of where they are situated.

23    [13]  National Bankruptcy Review Commission Final Report at 860-861.

24    [14]  The Commission Report also gives less protection to a chapter 11 trustee for a corporate debtor

25  on the concept that the trustee is a continuation of the debtor-in-possession (the continuance of the pre-filing

26  management) and that those duties do not change.  Professor Bogart vociferously disagrees with this both

27  because it would lead to many different standards (since it is based on the law of the individual states) and

28  because  management's  duty  changes  when  it  becomes  a  debtor-in-possession  and  assumes  the

responsibilities of a trustee.

7

1   as trustee is free to accept or reject the appointment. While there may be negative ramifications to the

2   selected trustee who refuses a case - since the United States trustee may decide not to offer him/her any

3   chapter 11 appointments in the future - that is the same chance that any professional trustee takes. Here

4   the creditors have even more safeguards than in the "outside world," since, if the majority in amount of

5   claims agree, they can replace the trustee with one

6   of their choosing.

7   Thus, in theory, there is no reason in a chapter 11 case to offer the trustee any greater protections

8   than are available to a trustee in a non-bankruptcy setting.

9   One exception to this rule for trustees serving under any chapter would be if the trustee makes a

10  full and fair disclosure to the court with notice to all parties in interest, and the court knowingly makes

11  an order permitting the trustee to act in a way which would otherwise breach his/her duty of care or

12  loyalty.

13  I do not believe that any such order was sought or given in this case. Therefore, under the theory

14  that I propose, Ms. Zamora, the chapter 11 trustee in this case, would not be protected from suit by

15  quasi-judicial immunity and the complaint could be filed including all properly pleaded claims for

16  breach of fiduciary duty. be they in the form of negligence, gross negligence, or willful and intentional

17  acts.

18  However, we are not living in an empty vacuum, devoid of guidance. So while the Bankruptcy

19  Code does not address under what circumstances a bankruptcy trustee can be sued personally and there

20  is a great deal of academic argument concerning what standard(s) should be used to balance the

21  competing interests of the creditors, the public, the trustee, and the bankruptcy system, the courts have

22  acted to fill the void on a case-by-case basis. And under the rules of *stare decisis*, I am bound to follow

23  precedent, as confusing as it is.

24

25

26

27

28

8

## II. CASELAW ON THE ISSUE OF IMMUNITY FOR TRUSTEES

### A. The Position of Trustee Qualifies for Immunity

In 1993 the Supreme Court outlined a two-step process to determine whether absolute immunity applied to the actions of a court reporter and thereby created a partial structure to be used in deciding whether immunity attaches to acts of others involved in the judicial process.[15]

First the court looked at the historical context: "In determining which officials perform functions that might justify a full exemption from liability, 'we have undertaken a considered inquiry into the immunity historically accorded the relevant official at common law and the interests behind it.'"[16] In *Antoine v. Byers & Anderson, Inc.*, the Court found that court reporters were not historically afforded judicial immunity.[17] But even if they were, this would not end the inquiry.

That is because of the second prong: "[W]hen judicial immunity is extended to officials other than judges, it is because their judgments are 'functionally comparable' to those of judges– that is, because they, too, 'exercise a discretionary judgment' as a part of their function."[18]

Almost a decade later, in *Curry v. Castillo (In re Castillo)*, the Ninth Circuit Court of Appeals used this methodology to determine whether a Chapter 13 bankruptcy trustee's scheduling and noticing of a bankruptcy confirmation hearing was an immune act.[19] The court stated:

> Consistent with *Antoine's* teachings, we must first inquire as to the immunity historically accorded a bankruptcy trustee at common law, during the development of the common-law doctrine of judicial immunity. We next consider whether the particular functions of the bankruptcy trustee at issue in this case . . . are functions involving the exercise of discretionary judgment.[20]

In *Castillo*, the Ninth Circuit discussed the historical background of the position of bankruptcy trustee, finding that the common law and nineteenth century predecessors to today's bankruptcy trustees

---

[15] Antoine v. Byers & Anderson, Inc., 508 U.S. 429 (1993).

[16] *Id.* at 432 (citing Butz v. Economou, 438 U.S. 478, 508 (1978) (quoting Imbler v. Patchman, 424 U.S. 409, 421 (1976))).

[17] *Antoine*, 508 U.S. at 433.

[18] *Id.* at 436 (citing Imbler v. Patchman, 424 U.S. at 423, n. 20).

[19] Curry v. Castillo (*In re* Castillo), 297 F.3d 940 (9th Cir. 2002).

[20] *Id.* at 949.

9

1    were entrusted with both administrative and adjudicative functions. The court stated that "[t]o the

2    extent the trustee performed the functions of a modern-day bankruptcy judge, immunity would have

3    extended to the performance of these common-law adjudicatory functions." Noting that "the trustee is

4    charged with many legal, adjudicative, clerical, financial, administrative, and business functions[,]" the

5    court held that "quasi-judicial immunity attaches to only those functions essential to the authoritative

6    adjudication of private rights to the bankruptcy estate."[21]

7          Thus it appears that the controlling case law in the Ninth Circuit directs the court to first look at

8    the position at issue, i.e. - a court recorder as in *Antoine* or a bankruptcy trustee as in *Castillo* - to see if

9    it is one whose functions were historically judicial in nature, and therefore was afforded immunity, and

10   only then to determine if the particular action being taken by the individual in that position was an

11   adjudicative function (first categorize the *actor* and then look at the nature of the *action*).

12         However, the problem with this is that the Supreme Court draws analogies from extra-judicial

13   areas, which then serve as examples of whether the *action* was given immunity so long as it was

14   performed by a person empowered by law to carry out that task (for example, customs agents selling

15   perishable property to pay the duty).[22] According to *Antoine* in footnote 8, citing Justice Scalia in *Burns*

16   *v. Reed,* even private citizens were historically entitled to immunity so long as they were performing a

17   function that was resolving disputes between parties or "authoritatively adjudicating private rights."[23]

18         This means that even if the *actor* is not a court employee or court official, so long as s/he is part

19   of a judicial, governmental, or adjudicative process, immunity can attach when the *action* itself is

20   inherent in the court carrying out its duties or is a substitute for something which the court is empowered

21   by law to do (such as a determination of private rights). Since the present case does not involve a

22   private citizen, but rather a trustee who was appointed by the court and is an inherent part of the

23   bankruptcy process, I can review this in the more straightforward way of first determining whether

24   trustees can be immune and then analyzing whether the acts contained in this complaint are those to

25   which immunity should attach.

---

27   [21] *Id.* at 950-951.

28   [22] *Antoine*, 508 U.S. at 433, fn. 8.

[23] Burns v. Reed, 500 U.S. 478, 499-500 (1991).

1    As to the potential immunity of those who serve as a trustee, once this is ruled on by the

2  Supreme Court or the Ninth Circuit Court of Appeals or the Bankruptcy Appellate Panel for the Ninth

3  Circuit, that determination would be final and will no longer be an issue in future cases in the

4  bankruptcy courts of the Ninth Circuit. This has occurred in the holding in *Castillo* and therefore need

5  not be undertaken in the present case. Trustees can have judicial immunity for at least some of their

6  actions.

7

8    **B.  A Trustee Can be Immune from Suit Concerning the Sale of Property of the Estate**

9    Having determined that one who holds the position of trustee is entitled to historical immunity

10  for acts that are adjudicative in nature, the next issue under the caselaw is an analysis of the actions

11  themselves to see whether they fall into that category. Using the *Antoine* and *Castillo* formula, the sale

12  of estate assets seems equivalent to the work of early bankruptcy commissioners. It involves discretion

13  and is similar to other tasks that were historically immune, such as those of tax assessors who valued

14  property and customs agents who sold it.[24]

15    In the modern context it is clear that the court has discretion to approve or reject a proposed sale

16  of assets. The trustee should also have the discretion to solicit, accept, reject, and negotiate offers

17  presented to her. In general a sale of assets is not a rote activity, but includes many factors that must be

18  considered by both the trustee and the judge during this multi-step process.[25] Thus, the actions of a

19  trustee in selling estate assets is the type of action that will be protected as an adjudicatory act.

20    This was also the holding in *Harris v. Wittman (In re Harris)*,[26] an unpublished decision from

21  the U.S. District Court for the Southern District of California. In that case, the debtor filed a complaint

22  alleging breach of contract against the trustee and her agents. The relevant actions performed by the

23  trustee included transferring and selling assets of the estate. Since *Castillo* had already established that

24

25    [24] *Antoine*, 508 U.S. at 433, fn. 8.

26    [25] *See generally* Lahijani v. Claims Prosecutor, LLC (*In re* Lahijani), 325 B.R. 282 (B.A.P. 9th Cir.

27  2005) (discussing the analytical process that a judge, as well as a trustee, must undertake in evaluating bids

28  during the sale of estate assets).

   [26] Harris v. Wittman (*In re* Harris), 2007 U.S. Dist. LEXIS 62184 at *8 (D. S.D. Cal. 2007).

1 trustees are entitled to immunity, the court in *Harris* did not carry out an analysis of whether the trustee

2 was historically afforded immunity, but simply asked whether the sale of assets was an adjudicative

3 function, and answered in the affirmative. The court stated that those functions are "essential to the

4 authoritative adjudication of private rights to the bankruptcy estate."[27] However, the court also stated

5 that its conclusion was further supported by the fact that the bankruptcy court had approved the sale of

6 assets at issue. Thus immunity was granted.[28]

7        Because a trustee is entitled to immunity for actions which are adjudicatory in nature, and the

8 sale of assets is an adjudicatory function, limiting the analysis to this two-step approach would result in

9 a holding that the trustee has complete immunity for all actions taken concerning the sale of estate

10 property. However, the caselaw in the Ninth Circuit and many other circuits does not release a trustee

11 from personal liability if her actions are a breach of the duty of loyalty (such as self-dealing) or are due

12 to gross negligence or a deliberate or willful breach of her duty of care.

13

14              **C. The Level of Quasi-Judicial Immunity for Trustees in the Ninth Circuit**

15                  **1. A Trustee is Immune from Personal Liability for Simple Negligence**

16        Through the years, sometimes in reliance on *Mosser v. Darrow*,[29] several circuits have held that

17 a trustee may be liable in his official capacity for negligence, but is *personally* liable only for willful and

18

19

20

21        [27] *Id.* at *29 (quoting *In re* Castillo, 297 F.3d at 951).

22        [28] There are clear distinctions between the facts concerning Continental Coin and those set forth in

23 *Harris*. For example, in the case before me, although a sale occurred and a court order for approval was

24 given, the issue is the failure to conduct an earlier sale, not the action in the confirmed sale. What is being

25 contested in Continental Coin is a non-sale, so to speak. Moreover, in *Harris* the court approved the

26 disputed sale, whereas here, it could be argued that this court never approved the failed acceptance of the

27 other offers, and the delay of sale, although the trustee did advise the court of the status of the case on a

28 periodic basis.

        [29] Mosser v. Darrow, 341 U.S. 267 (1951) (discussed below).

1   deliberate violations of his fiduciary duty.[30]  However, in 1983 the Ninth Circuit Court of Appeals

2   created a near panic for trustees when it ruled on *Hall v. Perry (In re Cochise College Park, Inc.).*[31]  In

3   that case creditors of the estate argued that the trustee was personally liable for failing to reject

4   executory contracts to the detriment of the estate (a similar issue to one being raised by Mr. Virtue as to

5   the mint lease).   The court stated that "[a]lthough a trustee is not liable in any manner for mistakes in

6   judgment where discretion is allowed, he is subject to personal liability for *not only intentional but also*

7   *negligent violations* of duties imposed upon him by law."[32]  Because this liability could be vitiated by a

8   court order, trustees streamed into court for "comfort orders" on almost every action that they took.

9        While the *Cochise* holding appears very broad, it is clear from the facts of that case that the

10  trustee was not negligent in the context of *Castillo.*  He made certain decisions knowing that they would

11  have a negative impact on the creditors.  For example, he may have decided to allow the land sale

12  contracts to be rejected by operation of law, but did not inform the other parties to those contracts and

13  continued to collect payments.  Although the *Cochise* court does not make any distinction and simply

14  uses the term "negligence," the behavior that it condemns goes well beyond the simple negligence

15  standard.[33]

16       This same language of broad liability for negligent acts popped up as dicta in the 1995 case of

17  *United States v. Hemmen,*[34] which dealt solely with intentional conduct by the trustee.  In *Hemmen,* the

18  _____

19       [30] *See* Sherr v. Winkler, 552 F.2d 1367, 1375 (10th Cir. 1977); Ford Motor Credit Co. v. Weaver, 680

20  F.2d 451, 461-462 (6th Cir. 1982); Lopez-Stubbe v. Rodriguez-Estrada (*In re* San Juan Hotel Corp.), 847

21  F.2d 931 (1st Cir. 1988); United States for the Use and Benefit of Julien P. Benjamin Equip. Co. v. Sapp,

22  641 F.2d 182, 184-185 (4th Cir. 1981).

23       [31] Hall v. Perry (*In re* Cochise College Park, Inc.), 703 F.2d 1339 (9th Cir. 1983).

24       [32] *Id.*, at 1357 (emphasis added).

25       [33] Black's Law Dictionary 1063 (7th ed. 2004) (defining "simple" or "ordinary" negligence as "[t]he

26  failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar

27  situation; any conduct that falls below the legal standard established to protect others against unreasonable

28  risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights").

     [34] United States. v. Hemmen, 51 F.3d 883 (9th Cir. 1995).

                                                    13

1   Internal Revenue Service alleged that the chapter 7 bankruptcy trustee was personally liable for his

2   failure to honor a levy. The trustee argued that he was shielded from personal liability under the

3   doctrine of quasi-judicial immunity. However, the court held that the trustee's failure to honor the levy

4   was not as a result of his duty to protect the assets of the estate, which is his statutory, legal obligation.

5   Citing *Bennett v. Williams*, a case that dealt with the negligent hiring and supervision of a management

6   company, the court stated that "[a]s a general matter, bankruptcy trustees enjoy broad immunity from

7   suit when acting pursuant to court order. . . . Trustees are not immune, however, for *intentional or*

8   *negligent* violation of duties imposed by law."[35]

9          But the effects of *Cochise*, *Bennett*, and *Hemmen* were limited by the 2002 opinion in *Castillo*,

10  in which the Ninth Circuit made it abundantly clear that a trustee will be protected from personal

11  liability for acts of simple negligence. The court stated that "[b]ecause we decide that [the trustee] is

12  entitled to immunity, we need not reach Castillo's argument that bankruptcy trustees may be liable for

13  negligence."[36]

14

15  **2. A Trustee is Never Immune from Personal Liability for Willful and Deliberate Acts**

16         For many years, the critical case on trustee liability has been *Mosser v. Darrow*.[37] The Supreme

17  Court uses both bankruptcy and trust-law language to deal with a situation in which the trustee in

18  reorganization for two common law trusts employed persons with the express agreement that they could

19  trade extensively in the bonds of subsidiary companies of the trusts. They did so for eight years, making

20  substantial profits which should have gone to the trusts rather than to these employees.

21         *Mosser* did not involve an issue of negligence, so the court did not decide whether the trustee is

22  protected if the actions complained of were simple negligence. Here the trustee had knowledge of the

23  self-dealing of his employees and hid that from the court and the creditors. For that reason, he was

24  personally liable for losses to the estate. Although *Mosser* has been cited for many sorts of propositions,

25  it is really a very narrow holding, limited to its facts.

26

27         [35] *Id.* at 891 (citing Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989)) (emphasis added).

28         [36] *In re* Castillo, 297 F.3d at 953.

           [37] *Mosser*, 341 U.S. 267 (1951).

                                                    14

1    Similarly, in *Walsh v. Northwestern Nat'l Ins. Co. (In re Ferrante)*, the Ninth Circuit held a

2  trustee personally liable for intentional acts which damage stakeholders of the estate.[38]   That case did

3  not concern negligence, but involved particularly egregious intentional behavior by a corrupt trustee

4  who not only sold cars belonging to the debtor's wholly-owned corporation (for which the debtor was a

5  personal guarantor), but then embezzled the money instead of paying the secured creditors.   The Ninth

6  Circuit Court of Appeals found the trustee to be personally liable and surcharged his bond to reimburse

7  the estate for the loss.

8

9  ### 3. The Ninth Circuit Has Not Directly Dealt With the Issue of Liability for Gross Negligence

10    The concept of gross negligence as a standard for trustee liability is not new, though it has had a

11  resurgence since the Commission recommendation in 1987.  For example, in 1938, the Second Circuit

12  held that because the trustee acted in a grossly negligent fashion by closing a contract without requiring

13  that the other party comply with the order approving the sale, the trustee would be personally liable for

14  the loss to the estate.[39]

15    But the most thoughtful recent opinion is *DiStefano v. Stern (In re J.F.D. Enterprises, Inc.)*,[40] in

16  which the court found that imposing personal liability on a trustee only in the case of intentional harm

17  would send the wrong message. "A trusteeship is 'serious business,' . . which demands attention.  If

18  trustees were liable only for intentional breaches of their duties, the goal of expeditious and efficient

19  administration of bankruptcy estates would be jeopardized.  More must be expected of trustees.  But

20  how much more?"[41] Judge Boroff's answer is that gross negligence "strikes the proper balance between

21  the difficulties of the task assumed by trustees and the need to protect the interest of creditors and other

22  parties in the bankruptcy case."[42]

23

---

24    [38] Walsh v. Northwestern Nat'l Ins. Co. (*In re* Ferrante), 51 F.3d 1473 (9th Cir. 1995).

25    [39] *In re* India Wharf Brewery, 96 F.2d 710 (2d Cir. 1938); *see also* Evans v. Williams (*In re* Hitt

26  Lumber & Box Co., 276 F. 650 (6th Cir. 1921).

27    [40] DiStefano v. Stern (*In re* J.F.D. Enter., Inc.), 223 B.R. 610 (Bankr. D. Mass. 1998).

28    [41] *Id.* at 627.

    [42] *Id.* at 628.

1    The Commission stated that "gross negligence should be defined as reckless indifference or

2  deliberate disregard of the trustee's fiduciary duty." Black's Law Dictionary defines it as follows:

3       A lack of slight diligence or care. . . . A conscious, voluntary act or omission in reckless
        disregard of a legal duty and of the consequences to another party, who may typically
4       recover exemplary damages. -- Also termed reckless negligence; wanton negligence;
        willful negligence; willful and wanton negligence; hazardous negligence; magna
5       neglegentia.

6       "Gross Negligence. As it originally appeared, this was very great negligence, or the want
        of even slight or scant care. It has been described as a failure to exercise even that care
7       which a careless person would use. Several courts, however, dissatisfied with a term so
        nebulous ... have construed gross negligence as requiring willful, wanton, or reckless
8       misconduct, or such utter lack of all care as will be evidence thereof .... But it is still true
        that most courts consider that 'gross negligence' falls short of a reckless disregard of the
9       consequences, and differs from ordinary negligence only in degree, and not in kind." W.
        Page Keeton et al., Prosser and Keeton on the Law of Torts § 34, at 211-12 (5th ed.
10      1984).[43]

11       As discussed above, this is a difficult standard to ascertain, but that does not mean that it is not
12
   the correct one to use.
13
         "Gross negligence" is defined under state law in many of the cases and this varies not only from
14
   case to case, but from court to court. For bankruptcy purposes it is important that there be a single test
15
   that can apply to all trustees. The Commission attempted to introduce such a test and that is as good a
16
   guide as any. Thus, for purposes of trustee liability, I find that the measure of "gross negligence" will be
17
   if the trustee acted with reckless indifference or deliberate disregard of her fiduciary duty.
18
         In parsing the law of the Ninth Circuit, the three major cases concerning trustee liability can be
19
   seen as each resting on a point on a continuum. At one end is *Castillo*, where the trustee acted with
20
   simple negligence - no knowledge and no intent - and thus was relieved of liability. At the other extreme
21
   is *Ferrante*, a case in which the trustee knowingly enriched himself through wrongful acts using his
22
   power as trustee and harming the estate. Mr. Duck had very specific intention to his actions and he was
23
   personally liable for them.
24
         In its *Castillo* opinion, the Ninth Circuit sidestepped *Cochise*. The only mention of the case
25

26

---

27    [43] Black's Law Dictionary 1062 (8th Ed. 2004) (most citations omitted). It should be noted that the

28  current Black's definition of "gross negligence" is not the same as that used in *In re* J.F.D. Enterprises, Inc.

   and *In re* Smyth.

1  (other than reporting what the BAP relied on) was the last two sentences of the opinion:

2  "We merely hold that the common law, legislative history, and the grant of immunity to bankruptcy

3  trustees and similar judicial officers in analogous cases compel us to conclude that Curry is entitled to

4  quasi-judicial immunity for both scheduling and noticing the confirmation hearing. Because we decide

5  that Curry is entitled to immunity, we need not reach Castillo's argument that bankruptcy trustees may

6  be liable for negligence. See Cochise College Park, 703 F.2d 1339."[44]

7      Up to this point it has not been important whether I find that the trustee is entitled to quasi-

8  judicial immunity (as in *Castillo*) or to an absolute defense in the proposed litigation (as in *Cochise*).

9  Nonetheless, I must admit that I do not understand the fine distinction made that allows the Ninth

10 Circuit to rule that a trustee is entitled to quasi-judicial immunity for negligence (*Castillo*) and yet can

11 be subject to personal liability for negligence (*Cochise*). Obviously if the trustee is entitled to immunity

12 for negligent actions, she is not subject to liability for negligence.

13      But the Ninth Circuit did not vitiate its *Cochise* opinion, so presumably it still has some

14 meaning. The general language used in *Cochise* implies a very broad negligence standard. But when

15 dealing with the specific acts of the trustee in that case, the court seemed to focus on something more

16 than simple negligence. The court held that the trustee should have known that the money he collected

17 was not property of the estate and it inferred that he had such knowledge. It never found actual

18 knowledge and intent. The court stated: "Charged with knowledge of the principles of bankruptcy law,

19 the trustee could not reasonably have believed that he was entitled to use the payments in the

20 administration of the estate."[45] This is something more than an error due to forgetfulness or simple

21 mistake. But because the court used the language of reasonability (which is classic in the area of

22 negligence), it appears to fit under the concept called gross negligence or reckless negligence or willful

23 negligence. So while *Cochise* may no longer be used to subject a trustee to personal liability for simple

24 negligence, it still stands for the proposition that a trustee can be liable for acts of gross negligence as

25 well as those that are willful and intentional.

26      Thus I find that the law of the Ninth Circuit excuses a trustee from simple or ordinary

27

28    [44] *In re* Castillo, 297 F.3d at 953.

      [45] *In re* Cochise College Park, Inc., 703 F.2d at 1356.

                                                17

1    negligence, but does not protect him from actions that are deemed to be gross negligence or for acts of

2    intentional wrongdoing.

4    **4.  A Court Order to Conduct the Sale After Full Disclosure Assures Trustee Immunity**

5        Through the years, many cases have turned on the existence of or absence of a court order

6    preapproving the trustee's actions.  To some extent this is because of language in *Mosser* which makes

7    it clear that a trustee who seeks to indemnify himself from liability for acts for which he would

8    otherwise be liable, may do so by giving full disclosure to the court and the creditors prior to taking

9    those actions.[46]  Though *Mosser* never requires a court order as a prerequisite for trustee immunity when

10   the action is merely negligent rather than intentional, language in some later cases implies that a court

11   order is an absolute requirement.

12       *Bennett v. Williams* made it even clearer: "Out of this apparent conflict, certain standards have

13   evolved which a trustee must satisfy before immunity may attach. The trustee should obtain court

14   approval and give notice to the debtor of a proposed action. . . .   The trustee's disclosure to the court

15   must be candid."[47]

16       In *Balser v. Dep't of Justice*, the debtors alleged that the United States trustee had acted

17   negligently and fraudulently in connection with the appointment and supervision of the examiner.  The

18   court did not undertake an analysis of whether the appointment and supervision of the examiner was a

19   task that was historically afforded judicial immunity.  Instead, the court looked in general to the many

20   tasks carried out by the United States trustee, and determined that "the United States trustee performs

21   many of the functions that had been assigned previously to the bankruptcy judge."[48]

22       The *Balser* court went on to state that "it is important to note that most of the acts that the

23   Balsers allege were unlawful (such as the appointment of the examiner and the sale of the properties)

25       [46] *Mosser*, 341 U.S. at 274.

26       [47] Bennett v. Williams, 892 F.2d 822, 823 (9th Cir. 1989); *see also* Read v. Duck (*In re* Jacksen),

27   105 B.R. 542, 545 (B.A.P. 9th Cir. 1989) (citing *In re* Cochise College Park, Inc., 703 F.2d 1339 (9th Cir.

28   1983)).

       [48] Balser v. Dep't of Justice, 327 F.3d 903, 911 (9th Cir., 2003)

1   were approved by the bankruptcy court."[49]  The Ninth Circuit found that the United States trustee was

2   entitled to immunity.

3       Based on *Mosser*, if the trustee seeks a court order on full disclosure and notice to the effected

4   parties (creditors, equity), she would be protected even if she violated her duty of loyalty or acted in a

5   willful and deliberate manner that would damage the estate.

6       If [the employees'] services were so indispensable that an arrangement so highly irregular
        was of advantage to the trust, this might have been fully disclosed to the court and the
7       creditors cited to show cause why it should not have been openly authorized. Instead of
        this, the trustee, although he did discuss with Judge Holly the employment of Kulp and
8       Miss Johnson, did not disclose the critical fact that he was employing them on terms
        which permitted their trading in the underlying securities. Indeed, it appears that he did
9       not even disclose this feature of the transaction to his own counsel. It is hardly probable
        that a candid disclosure to creditors, to the court, and to interested parties would have
10      resulted in instructions to have pursued this course; but, had it been authorized, at least
        the assenting creditors might have found themselves estopped to question the
11      transaction.[50]

12

13      While a court order after full disclosure to the creditors is usually wise, in the case of sale

14  negotiations it is not possible.  The trustee should not be put in a position in which she is required  to

15  reveal the identities of interested buyers or the terms of their offers while she is trying to make the deal.

16  This would chill any bidding and be extremely detrimental to the sale process.  Thus, even if in general a

17  court order were required - which it is not -  under such circumstances, no court order is needed for the

18  trustee to invoke judicial immunity concerning the sale negotiations or similar activities.

19

20  **III.  THE COMPLAINT MUST EXCLUDE ANY CLAIMS AGAINST THE TRUSTEE'S
        ATTORNEY**

21      The trustee's attorney in this case does not owe a statutory or fiduciary duty to the creditors of

22  the estate.[51]  The attorney's duties are to the trustee.  The claims for breach of statutory and fiduciary

23  duties against the attorney cannot proceed.  The malpractice claim against the attorney also cannot

24  proceed, as creditor lacks standing.

25  _____

26      [49]  *Id.* at 910.

27      [50]  *Mosser*, 341 U.S. at 274.

28      [51]  Wolf v. Kupetz (*In re* Wolf & Vine, Inc.), 118 B.R. 761, 771 (Bankr. C.D. Cal. 1990) (stating that
        although a trustee owes a fiduciary duty to creditors, the attorneys for the trustee do not).

19

### IV. <u>HILL, FARRER & BURRILL CANNOT BE APPOINTED AS COUNSEL</u>

Mr. Virtue seeks to employ Hill, Farrer & Burrill to represent him/the estate in this litigation. He has agreed to personally pay their fees, but he expects to seek reimbursement from the estate if this suit is successful. This prior approval of an administrative expense is improper for several reasons. Although Mr. Virtue asserts that the bankruptcy code allows the employment of special counsel who has represented a creditor (11 USC §327(c)), this is only authorized when it is the *trustee* who is hiring someone "to represent or assist the trustee in carrying out the trustee's duties under this title."[52] Here it would be the creditor who is hiring counsel to sue the trustee on behalf of the estate. That does not fall under the language of §327 and since the attorney must be hired by the *trustee*, but would be suing the *trustee*, it would be an irreconcilable conflict.

If this suit recovers meaningful sums for the estate, it is possible that Mr. Virtue can seek reimbursement from the estate as an administrative expense under §503(b)(3)(D) for having made a substantial contribution. However, the issue of substantial contribution cannot be determined until the end of the litigation. At that time, Mr. Virtue may submit his request for reimbursement. But he should be aware that my initial feeling is that if substantial contribution does exist, I intend to limit the amount of reimbursement to the same terms that I often allow on other cases that would usually be handled through a contingency arrangement, that is the lesser of (1) 33 1/3% of actual recovery if the matter terminates through motion or settlement pretrial, 40% if the matter goes to trial, or (2) the reasonable and necessary fees and expenses on an hourly basis. Otherwise all recovery may go to counsel or there may be an incentive to overwork this rather straightforward case. While I realize that Mr. Virtue is a major creditor, he is not the only creditor in this case. Thus, it is necessary to protect the assets for all interested parties.

---

[52] B.A.P.C.P.A., 11 U.S.C. §327(a) (2005).

## V. <u>MR. VIRTUE MAY FILE A REVISED COMPLAINT</u>

A complaint may be filed against the trustee only as to alleged acts of gross negligence or willful and deliberate violation of her duty of care as a fiduciary. There are no allegations here as to the trustee's self-dealing or breaches of her duty of loyalty. So those will not be contained in the complaint. This complaint is to be filed within twenty days of entry of the order on this memorandum of opinion.

The allegations which fall under the business judgment rule and are not actionable. They are not to be pursued in the complaint. As currently pleaded this would include the issues of failing to set aside the assumption of the ground leases or to hire a real estate broker.

DATED: 12/11/07

GERALDINE MUND
United States Bankruptcy Judge

1

## CERTIFICATE OF MAILING

2

I, _Kathleen Cyier_, a regularly appointed and qualified clerk of the United

3 States Bankruptcy Court for the Central District of California, do hereby certify that in the performance of my duties as such clerk, I personally mailed to each of the parties listed below, at the addresses set

4 opposite their respective names, a copy of the

5 **MEMORANDUM OF LEGAL OPINION RE: ORDER ALLOWING CREDITOR ROGER VIRTUE TO FILE A COMPLAINT**

6
in the within matter.  That said envelope containing said copy was deposited by me in a regular United

7 States mailbox in the City of Los Angeles, in said District, on DEC 1 2 2007

8

9 **Continental Coin Corporation**
5627 Sepulveda Blvd
Sherman Oaks, CA 91411

10

11 **Robert S Altagen** - Attorney for Debtor
12301 Wilshire Blvd, #412
Ste 412

12 Los Angeles, CA 90025

13 **Nancy J Zamora** - Chapter 11 Trustee
444 S. Flower Street, Suite 1550

14 Los Angeles, CA 90071

15 **Anthony N R Zamora** - Attorney for Chapter 11 Trustee
444 S. Flower Street, Suite 1550

16 Los Angeles, CA 90071

17 **Daniel McCarthy** - Attorney for Movant Creditor
300 South Grand Ave.

18 Los Angeles, CA 90071-3147

19 U.S. Trustee - Interoffice Mail
Att: Margaux Ross

20

21

22

23

24 _____
(Clerk)

25

26

27

28